IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number _____

AMANDA HALL,

      Plaintiff,

v.

THE COLORADO DEPARTMENT OF CORRECTIONS;
DENVER WOMEN'S CORRECTIONAL FACILITY;
ARISTEDES ZAVARAS, Executive Director of the Colorado Department of Corrections, in his
      individual and official capacities;
GARY GOLDER, Director of Prisons, in his individual and official capacities;
MARK A. BROADDUS, Warden of the Denver Women's Correctional Facility, in his
      individual and official capacities;
NEVA BUTTERFIELD, Associate Warden of the Denver Women's Correctional Facility, in her
      individual and official capacities;
SCOTT HALL, Associate Warden of the Denver Women's Correctional Facility, in his
      individual and official capacities;
MICHAEL CARAMIA, Lieutenant at the Denver Women's Correctional Facility, in his
      individual and official capacities; and
LESHAWN TERRELL, Sergeant at the Denver Women's Correctional Facility, in his individual
      and official capacities,

      Defendants.

---

## VERIFIED COMPLAINT

---

      Plaintiff, Amanda Hall, by and through her attorneys, Mari Newman, Darold W. Killmer,

Althea S. Licht and Rebecca T. Wallace of KILLMER, LANE & NEWMAN, LLP, hereby files her

Verified Complaint and respectfully alleges as follows:

## I.      INTRODUCTION

      1.      Plaintiff Amanda Hall was the victim of a prison system that looked the other way

as one or more guards treated inmates as objects of their own sexual gratification.  Ms. Hall

suffered, and continues to suffer, injuries from being the victim of an inherently coercive sexual relationship with Defendant Sergeant Leshawn Terrell while in the custody of the Defendant Colorado Department of Corrections at the Denver Women's Correctional Facility.  After repeated sexual contact, Ms. Hall was ultimately brutally raped by Defendant Sergeant Terrell. Ms. Hall was deprived of her rights under the United States Constitution as a result of Defendants' knowing and deliberate indifference to the serious risk of harm and injury to Ms. Hall.  Ms. Hall's injuries were caused by the custom, policy and/or practice of the Denver Women's Correctional Facility and/or the Colorado Department of Corrections.  This is a civil action for declaratory and other equitable relief, as well as damages, pursuant to 42 U.S.C. § 1983 and Colorado common law for Defendants' violation of Plaintiff Amanda Hall's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

## II.  JURISDICTION AND VENUE

2.      This action arises under the Constitution and laws of the United States, and is brought pursuant to Title 42 U.S.C. § 1983.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331.  Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

3.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## III.    PARTIES

4.      Plaintiff Amanda Hall is and has been, at all times referred to herein, a resident of and domiciled in the State of Colorado.  During the relevant time period, Ms. Hall was housed at

the Denver Women's Correctional Facility ("DWCF"), a facility of the Colorado Department of Corrections.

5.      Defendant Colorado Department of Corrections is a political subdivision of the State of Colorado and has a mailing address of 2862 South Circle Drive, Colorado Springs, Colorado 80906.

6.      At all times relevant to the subject matter of this litigation, Defendant Aristedes Zavaras was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as the Executive Director of the Colorado Department of Corrections, and pursuant to Colorado state statute, and is the state official who manages, supervises, and controls the correctional institutions operated by the State of Colorado, including the DWCF, and who is responsible for developing policies and procedures with respect to the operation of the Colorado Department of Corrections.

7.      At all times relevant to the subject matter of this litigation, Defendant Gary Golder was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as the Director of Prisons.

8.      At all times relevant to the subject matter of this litigation, Defendant Mark A. Broaddus was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as the Warden of the DWCF, responsible overseeing operations at the DWCF.

9.      At all times relevant to the subject matter of this litigation, Defendant Neva Butterfield was a citizen of the United States and a resident of Colorado and was acting under color of state law in her capacity as an Associate Warden of the DWCF, overseeing operations at the DWCF.

3

10.     At all times relevant to the subject matter of this litigation, Defendant Scott Hall was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as an Associate Warden of the DWCF, overseeing operations at the DWCF.

11.     At all times relevant to the subject matter of this litigation, Defendant Michael Caramia was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as a Lieutenant at the DWCF.

12.     At all times relevant to the subject matter of this litigation, Defendant Sergeant Leshawn Terrell was a citizen of the United States and a resident of Colorado and was acting under color of state law in his capacity as a Sergeant employed at the DWCF.

## IV.   FACTUAL ALLEGATIONS

13.     During the relevant time period, Amanda Hall was incarcerated at the Denver Women's Correctional Facility in Denver, Colorado.

14.     Ms. Hall participated in a work assignment program at the DWCF in the kitchen, where she was supervised by Defendant Sergeant Terrell.

15.     As a Sergeant in the facility where Ms. Hall was housed, Defendant Terrell could exercise control over virtually every aspect of Ms. Hall's life.

16.     In May 2006, Defendant Sergeant Terrell approached Ms. Hall and coerced her into engaging in sexual acts in the cooler in the kitchen.

17.     In order to coerce Ms. Hall to submit to his sexual desires, Defendant Sergeant Terrell promised that he would "take care of" her.  Inherent in this promise was also the converse: if she refused to submit to his sexual desires, he could and would make life very difficult for her.

18. Feeling that she had no real choice under the circumstances, Ms. Hall reluctantly acquiesced.

19. Defendant Sergeant Terrell then proceeded to treat Ms. Hall as a virtual sex slave, demanding sexual gratification at his whim. Ms. Hall repeatedly told him that she did not want to have sex with him, but Defendant Sergeant Terrell would not take "no" for an answer.

20. Although he had promised to take care of Ms. Hall, Defendant Sergeant Terrell took full advantage of his virtually unlimited power over her.

21. In exchange for sexual acts, Defendant Terrell gave Ms. Hall small amounts of money, stamps and coffee.

22. Given the profound disparity in power and authority between Ms. Hall (an inmate) and Defendant Sergeant Terrell, the sexual relationship was inherently involuntary.

23. Ms. Hall was uncomfortable with the relationship and told this to Defendant Sergeant Terrell. The coercive sexual relations lasted from May until October 2006.

24. On or about October 7, 2006, while Ms. Hall was working in the kitchen, Defendant Sergeant Terrell told Ms. Hall to go into the cooler and wait for him. She repeatedly refused his entreaties. Eventually, however, Ms. Hall did as she was told because Defendant Sergeant Terrell became visible angry and aggressive.

25. Again in the cooler, Ms. Hall told Defendant Sergeant Terrell that she did not want to engage in any sexual activity with him. He became violent and angry and demanded that she get on her knees and perform oral sex, and shoved his penis in her mouth. Then he demanded that she get up and bend over. Again she said no, but he insisted. Defendant Sergeant Terrell then grabbed her by the shoulders and forcibly sodomized her. Although Ms. Hall

repeatedly told him that she was in pain and to stop, Defendant Sergeant Terrell continued to

sodomize her so forcefully and so aggressively as to tear Ms. Hall's rectum.

26.     After this brutal rape, Defendant Sergeant Terrell left Ms. Hall bleeding in the

cooler room, and told her to "go clean herself off."

27.     Ms. Hall returned to her cell visibly upset and bleeding.  Her cellmate

immediately realized that something was very wrong, and reported the sexual assault.

28.     Due directly to being raped by Defendant Sergeant Terrell, Ms. Hall lost control

of her bowel functions and continues to suffer from irregular bowel functions.

29.     As a result of this repeated unlawful sexual contact, and her roommate's reporting

of the sexual assault, Ms. Hall continues to be victimized as she suffers retaliation from other

staff members, including officers at the Denver Women's Correctional Facility who refuse to

speak to Ms. Hall.

30.     This by no means was the first sexually coercive act by Defendant Sergeant

Terrell, or other guards at the Denver Women's Correctional Facility.  Upon information and

belief, Defendant Sergeant Terrell has engaged in other abusive sex acts with female inmates in

the past, and it was well known that he has had other "relationships" with female inmates.

31.     Upon information and belief, Defendant Sergeant Terrell had a coercive sexual

relationship with another inmate C.R.[1] prior to inducing Ms. Hall into having sex with him.

During this "relationship" Defendant Sergeant Terrell would touch Ms. Hall's buttocks and ask

for "some pussy."

32.     Upon information and belief, another inmate reported to Defendant Sergeant

Terrell's supervisor, Defendant Lieutenant Caramia, that Defendant Sergeant Terrell would "rub

up against her."

---

[1] To protect the privacy interests of other inmates referenced in this Complaint, only initials will be used.

33.     Upon information and belief, Defendant Sergeant Terrell was seen by inmates having violent sexual intercourse with another inmate, M.G., during which he was holding M.G. up against a wall by the neck.

34.     Upon information and belief, Defendant Sergeant Terrell's abusive and coercive sexual contact with female inmates was well known, not only among other inmates, but other officers as well.

35.     Upon information and belief, other officers at the DWCF are continuing to use their position of power to engage in sexually coercive relationships with female inmates.

36.     Defendants knew or reasonably should have known that Ms. Hall and other inmates were at risk of being sexually assaulted by prison guards, including Defendant Sergeant Terrell, at the Denver Women's Correctional Facility.

37.     Defendants failed to provide Ms. Hall (and other inmates) humane conditions of confinement by knowingly, voluntarily, recklessly and with willful disregard to her personal safety allowing her to be sexually assaulted and raped.

38.     Defendants knowingly, recklessly and intentionally disregarded an obvious serious risk to Ms. Hall.

39.     Defendants had a policy, pattern and/or practice of disregarding this obvious risk to Ms. Hall and other inmates.

## V.     STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Eighth Amendment and Fourteenth Amendment Violations
(Against All Defendants)

40.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

41.     Defendants were acting under color of state law in their actions (and inactions) at all times relevant to this action.

42.     Defendant Colorado Department of Corrections had a custom, policy, or practice of acting knowingly and with deliberate indifference to the constitutional rights of inmates by failing to protect Ms. Hall, and other inmates, from the known risk of rape and other sexual abuses by guards within the Denver Women's Correctional Facility and the Colorado Department of Corrections.

43.     The acts or omissions of Defendants amounted to deliberate indifference to the substantial risk of sexual assault to Ms. Hall, and other inmates, violating her and their Eighth Amendment rights to be free from cruel and unusual punishment.

44.     Defendants knowingly, intentionally, willfully and with wanton disregard to the obvious serious risk of sexual assault, failed to provide humane conditions of confinement, resulting in substantial harm to Ms. Hall and other inmates.

45.     The acts or omissions of each Defendant were the legal and proximate cause of Ms. Hall's damages in that she suffered extreme physical injury, including physical intrusion into bodily privacy and integrity, loss of bowel functioning, and mental pain and anguish.

46.     Defendant Colorado Department of Corrections' unconstitutional policies, customs or practices, as described herein, were the legal and proximate cause of Ms. Hall's injuries.

47.     Such policies, as well as Defendants' actions and inaction violated Ms. Hall's right to be free from cruel and unusual punishment while incarcerated within the government-run detention facility, and intentionally deprived Ms. Hall of due process and the rights, privileges,

8

liberties, and immunities secured by the Constitution of the United States of America, and caused her other damages.

48.     Defendants' deliberate, intentional, willful and wanton disregard to the obvious, serious risks to Ms. Hall, posed by Defendants' failure to protect inmates, including Ms. Hall, from the known threat of sexual assault by guards, violated Ms. Hall's rights under the Eighth and Fourteenth Amendments to the United States Constitution.

49.     Defendants' conduct in violating Ms. Hall's rights as described herein shock the conscience and is intolerable to society's standards of fundamental fairness.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Supervisory Liability in Hiring, Training, and/or Supervising**
(Against Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia)

50.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

51.     Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia were, at all relevant times and on the issues relevant herein, policymakers for the Colorado Department of Corrections, whose edicts or acts may fairly be said to represent the Colorado Department of Corrections official policy, by establishing policies, procedures, customs, and/or practices for the Colorado Department of Corrections and/or the Denver Women's Correctional Facility.

52.     These policies, procedures, customs, and/or practices became the policies, procedures, customs and practices for Defendant Colorado Department of Corrections and/or the Denver Women's Correctional Facility itself.

53.     Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia developed and maintained policies, procedures, customs, and/or practices, including a failure to adequately hire, train and/or supervise subordinate employees regarding the protection of inmates from rape

9

and sexual assault, exhibiting or resulting in deliberate indifference to the constitutional rights of persons in the Denver Women's Correctional Facility, which proximately caused the violation of Ms. Hall's constitutional rights as set forth herein, as well a the rights of others similarly situated.

54.     Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia failed to properly hire, train, supervise and/or discipline their employees regarding the protection of inmates, including Ms. Hall, from rape and sexual assault.

55.     Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia knew, or had reason to know, that their employees would foreseeably use their authority and influence to rape and sexually assault inmates, thereby violating inmates' constitutional rights.

56.     The inadequate hiring, training and/or supervision provided by Defendants resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendants.

57.     In light of the duties and responsibilities of guards and other Colorado Department of Corrections personnel who exercise control over individuals incarcerated at the Denver Women's Correctional Facility, the need for specialized training, supervision and discipline is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional rights, such as those described herein, that Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia are liable for their failure to appropriately hire, train, and/or supervise such guards and other Denver Women's Correctional Facility personnel.

58.     Defendants were deliberately indifferent to the obvious serious need for protection of inmates, including Ms. Hall, knowing that serious consequences could be suffered by Ms. Hall, and other inmates, by failing to properly hire, train and supervise their employees.

59.     Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia could have and should have pursued reasonable methods for the hiring, training and supervision of such employees, but failed to do so.

60.     Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia's policies, customs, or usages in failing to properly train and supervise their employees were the moving forces and proximate cause of the violation of Ms. Hall's constitutional rights, and the rights of those similarly situated.

61.     Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia ratified the unconstitutional conduct described herein, causing such conduct to be legally attributable to each Defendant.

62.     The acts or omissions of Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia caused Ms. Hall damages in that she suffered physical and mental pain and injury as described above, from which she will likely continue to suffer for the rest of her life.

63.     As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Ms. Hall suffered and continues to suffer injuries, damages and losses as set forth herein.

64.     The actions of Defendants Zavaras, Golder, Broaddus, Butterfield, Hall and Caramia as described herein intentionally deprived Ms. Hall of due process and the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused her other damages.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – 14th Amendment Substantive Due Process - Failure to Protect**
(Against All Defendants)

11

65.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

66.     Defendants were acting under color of state law in their actions (and inactions) which occurred at all times relevant to this action.

67.     By incarcerating Ms. Hall, and thereby depriving her of her liberty, Defendants created a special relationship with Ms. Hall that required them to provide reasonable protection of Ms. Hall's safety, required them to provide reasonable training of jail employees in order to protect Ms. Hall's safety, and required them to provide reasonable supervision of jail employees in order to protect Ms. Hall's safety.

68.     Defendants knew or reasonably should have known that Defendant Sergeant Terrell posed a serious threat to Ms. Hall's safety; yet Defendants failed to take reasonable measures to protect Ms. Hall and other inmates from Defendant Sergeant Terrell.

69.     Defendants knew or reasonably should have known that jail employee training with respect to having and reporting sexual relationships with inmates was insufficient to protect the safety of Ms. Hall and other inmates.

70.     The acts or omissions of each Defendant were the legal and proximate cause of Ms. Hall's damages in that she suffered extreme physical injury, including physical intrusion into bodily privacy and integrity, loss of bowel functioning, and mental pain and anguish.

71.     Defendant Colorado Department of Corrections' unconstitutional policies, customs or practices, as described herein, were the legal and proximate cause of Ms. Hall's injuries.

72.     Such policies, as well as Defendants' actions and inactions violated Ms. Hall's substantive due process right to reasonable protection of her safety while being incarcerated

within the government-run detention facility, and intentionally deprived Ms. Hall of due process and the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused her other damages.

73.    Defendants' deliberate, intentional, willful and wanton disregard to the obvious, serious risks to Ms. Hall, posed by Defendants' failure to protect inmates, including Ms. Hall, from the known threat of sexual assault by guards, violated Ms. Hall's substantive due process right under the Fourteenth Amendments to the United States Constitution.

**WHEREFORE**, Plaintiff Amanda Hall respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including but not limited to, the following:

    a. Appropriate equitable relief including declaratory and injunctive remedies;

    b. Actual economic damages as established at trial;

    c. Compensatory damages, including, but not limited to, those for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    d. Punitive damages for all claims allowed by law in an amount to be determined at trial;

    e. Pre-judgment and post-judgment interest at the highest lawful rate;

    f. Attorney's fees and costs; and

    g. Such further relief as justice requires.

13

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 13th day of May 2008.

KILLMER, LANE & NEWMAN, LLP

Mari Newman
Darold W. Killmer
Althea S. Licht
Rebecca T. Wallace
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000

ATTORNEYS FOR PLAINTIFF

**VERIFICATION**

I, Amanda Hall, being first duly sworn state that the foregoing factual allegations in this complaint are true and correct to the best of my knowledge, information and belief.

Amanda Hall

Signed before me, Patricia Duran, this 13th day of May, 2008.



14