## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00999-DME-MEH

AMANDA HALL,

      Plaintiff,

v.

LESHAWN TERRELL, Sergeant at the Denver Women's Correctional Facility, in his individual and official capacities,

      Defendant.

---

## PLAINTIFF'S TRIAL BRIEF

---

### INTRODUCTION

Defendant Leshawn Terrell's complete abuse of his position of power over incarcerated women, subjecting them to the whims of his sexual desires, is deplorable. Sadly, Plaintiff Amanda Hall is just one of the many women who has suffered, and continues to suffer, from sexual abuse by prison guards. This Court now has an opportunity to determine the proper amount of damages, both to compensate Ms. Hall for the injuries she suffered from being preyed upon and raped, as well punitive damages recognizing the egregiousness of Defendant Terrell's abuse of power.

### ARGUMENT

**I.  The Award of Damages Against Defendant Terrell is Within the Sound Discretion of the Court**

This Court, having entered its *Order Granting Renewed Motion for Entry of Default Judgment as to Leshawn Terrell*, has already made findings of fact and conclusions of law holding Defendant Terrell liable for his sexual abuse and rape of Ms. Hall. [Doc. # 106]. Thus, the issue before the Court is Plaintiff's request for relief, and it is within the Court's discretion to determine the appropriate amount of damages and other relief. *See,* FED. R. CIV. P. 55(b).

This Court has requested guidance regarding its authority to award damages in the absence of a specific monetary demand in Ms. Hall's Amended Complaint.[1] This question is uniquely relevant to the default judgment context: Whereas the liberal pleading standard of Rule 8 of the Federal Rules of Civil Procedure requires only a "demand for the relief sought, which may include relief in the alternative or different types of relief," the Rules also provide that when final judgment is entered by default, the "judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P., 8(a)(3) & 54(c). Under circumstances such as this, where the damages are not readily quantifiable, courts have fashioned appropriate procedures to address the tension created by these seemingly conflicting rules in a manner calculated to afford sufficient due process protections to the defendant, while at the same time ensuring that plaintiffs are adequately compensated for the harms they have suffered. By providing that the defendant receives adequate notice of potential exposure, and, where necessary, conducting an evidentiary hearing providing an opportunity to be heard, the seemingly competing interests imposed by Rules 8 and 54 are not mutually exclusive. Both of these protections -- adequate notice and an opportunity to be heard -- have been afforded to Defendant Terrell.

### A.   Defendant Terrell Has Been Provided Adequate Notice

Courts and commentators alike have noted that Rule 54(c) is predicated upon due process considerations:

> [T]he purpose of the distinction made in [Rule 54] between default judgments and contested judgments [] is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and

---

[1] Ms. Hall's demand for relief in her Amended Complaint includes prospective injunctive and declaratory relief and other appropriate equitable relief; actual economic damages as established at trial; compensatory damages, including, but not limited to, those for future pecuniary losses, physical and emotional pain, suffering, inconvenience, humiliation, mental anguish, loss of enjoyment of life, and other nonpecuniary losses; punitive damages for all claims allowed by law in an amount to be determined at trial; pre-judgment and post-judgment interest at the highest lawful rate; attorney's fees and costs; and such further relief as justice requires. *See, First Am. Compl.* at 23 [Doc. #23]. Counsel will file a motion seeking reasonable attorney's fees and costs following the April 20, 2009 Trial on Remedies.

> money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Silge v. Merz,* 510 F.3d 157, 159 (2d Cir. 2007) (citing 10 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE, § 2663 (1998)).  Indeed, "the rule ensures that a defendant who is considering default can look at the damages clause, satisfy himself that he is willing to suffer judgment in that amount, and then default without the need to hire a lawyer." *Id.* at 160.  Because Rule 54(c) is premised upon due process considerations of notice, courts have found it fitting to award damages on account of default even in the absence of a specified amount in the complaint, so long as the defendant had adequate notice.  *See, e.g., Mutaka Mwani v. Bin Ladin*, 244 F.R.D. 20, 23 (D. D.C. 2007) (allowing evidentiary hearing to determine amount of damages where plaintiffs' complaint sought unspecified damages for the loss of human life, serious bodily injury, emotional distress, business losses, and personal injury claims); *Meyer v. Cincinnati,* 1991 U.S. App. LEXIS 20452, *7 (6th Cir. August 27, 1991) (awarding damages to plaintiff for defending against unlawful arrest, even though amount not specified in the complaint, based on plaintiff's post-default affidavit attesting to the amount of damages).

In *Cameron v. Myers*, 569 F. Supp. 2d 762 (N.D. Ind. 2008), the plaintiff brought claims against a prison doctor for physical and emotional injuries suffered from a lack of medical treatment.  Alleging no specific damage amounts, the plaintiff sought compensatory damages for the physical and emotional injures he suffered, as well as punitive damages.  After the plaintiff filed a motion for default judgment, the court allowed the plaintiff to submit documentation and conducted a hearing in order to determine the amount of appropriate damages.  *Id.* at *2 (awarding plaintiff $250,350 in actual and compensatory damages and costs).

Similarly, in *Appleton Electric Co. v. Graves Truck Line, Inc.*, 635 F.2d 603 (7th Cir. 1980), the Seventh Circuit Court of Appeals affirmed the district court's entry of a default judgment that awarded relief beyond that requested in the complaint. Rejecting the defendant's argument that he had a due process right to know the "exact liability" stemming from default, the court held that so long as the defendant is able to the "weigh the advantages and disadvantages of defaulting" before choosing to default, the notice requirement inherent in Rule 54(c) is satisfied. *Id.* at 610. The court noted that the defendant, like Defendant Terrell, was well aware that the nature of the damages did not lend to easily ascertainable maximum sums or upper limits:

> The apparent purpose of limiting default judgments to the amount prayed for is to protect defendants who choose to default, relying on the damage ceilings contained in plaintiffs' prayers. There is no such ceiling that Graves relied on in choosing to default, unless it be one of Graves's own calculation. Graves is thus not now succored by Rule 54(c).

*Id.* at 610. Similarly, in the present case, there are no "damage ceilings" upon which Defendant Terrell could have relied, given that the types of damages Ms. Hall seeks do not lend themselves to readily ascertainable or precise maximum amounts or damage caps. In addition, the relief requested, including compensation for physical and emotional pain, suffering, humiliation, mental anguish, and loss of enjoyment of life, is, in large part, traditionally for the finder of fact to determine, and Ms. Hall does not seek any category of damages beyond that which was demanded in the complaint. *See, Silge v. Merz,* 510 F.3d 157, 160 (2d Cir. 2007) (rejecting plaintiff's demand for pre-judgment interest not demanded in the complaint).

Ms. Hall's Amended Complaint sets forth in great detail the nature of relief sought, the brutality of Terrell's conduct, and the severity of the harm Ms. Hall has suffered, including the surgical intervention needed to repair the physical injury caused by Defendant Terrell. Thus, Defendant Terrell has plainly had adequate notice that these categories of damages, as set forth in the Amended Complaint, could give rise to significant liability. Similarly, Ms. Hall's demand

for punitive damages, which have no damage caps in federal civil rights cases, has provided Defendant Terrell with adequate notice of his potential exposure in not defending this case.

Moreover, Defendant Terrell has had ample notice and opportunity to determine whether to expend the time and effort to appear and defend his position at the April 20, 2009 Remedies Trial. All court filings have been sent to Defendant Terrell. Yet, despite having been notified of all events in this action -- including being personally served with the Amended Complaint by a private process server at the Denver County District Court -- Defendant Terrell has wholly and volitionally disregarded this Court's authority over him.[2] *See, Renewed Motion for Default Judgment* [Doc. #102]. In addition, undersigned counsel, although not under any obligation to do so, has made numerous efforts to notify Defendant Terrell by certified mail, giving him additional notice of his potential liability and providing ample opportunity to respond. *Id*. Importantly, this Trial Brief -- and particularly the illustrative verdicts and settlements awarded to plaintiffs who suffered conduct similar to that in this case -- serves as <u>additional</u> notification to Defendant Terrell of the consequences of not attending the Remedies Trial, in which he will have an opportunity to present evidence on his own behalf and challenge the remedies sought.

> **B.     An Evidentiary Hearing is the Appropriate Procedure to Determine the Amount of Damages to be Assessed Against Defendant Terrell**

In the context of default judgments, the trial court has "considerable latitude in determining the *amount* of damages." *Jones v. Winnepesaukee Realty,* 990 F2d 1, 4 (1st Cir. 1993) (citing *Sony Corp. v. Elm State Elecs., Inc*., 800 F.2d 317, 321 (2d Cir. 1986). When presented with a scenario where damages are not subject to precise calculation and the plaintiff has not specified the amount of damages sought in her complaint, courts have typically relied on Rule 55(b)(2)(B)'s hearing provision to make a damages determination. *See, Williams v. Lakin*, 2007 U.S. Dist. LEXIS 29038,

---

[2] Defendant Terrell similarly failed to appear for numerous criminal proceedings related to his sexual assault of Ms. Hall. *See Status Report,* filed March 24, 2009 [Doc. # 127].

5

*7 (N.D. Okla. Apr. 18, 2007) (requiring evidentiary hearing on damages after entry of default because the complaint did not set forth a sum certain, and, therefore "the amount of damages sought by plaintiff was not clear from the face of the complaint"); *GFSI, Inc. v. San Sun Hats & Cap Co.*, 2008 U.S. Dist. LEXIS 13231 (D. Kan. Feb. 20, 2008) (determining that because "[n]o specific damages were asserted in [the] complaint, as it only set forth damages in an amount 'exceeding $75,000,'" a hearing was necessary "for the court to determine the amount of damages to be entered with the default judgment"); *Winnepesaukee Realty,* 990 F.2d at 4 (determining that evidentiary hearing was appropriate rather than relying on "unverified allegations to determine an appropriate award of damages in a case not involving a liquidated amount") (citations omitted).

Undersigned counsel was presented with a similar circumstance in the cases of *Hyacinth C. Wells & Kimberly Kral v. Lobb & Company, Inc., et al.,* Civil Action Nos. 97-WM-1011 and 98-WM-279 (D. Colo.) ("*Wells* and *Kral*"), before Judge Walker Miller in this Court.[3] In that case, undersigned counsel represented two women who were sexually harassed in the workplace by a supervisor and the president of the company, who had subjected the women to demeaning sexual comments, inappropriate touching (such as placing hand on her leg and trying to hold plaintiff's hand) and repeated invitations to go out for dates. *See, Exs. 1 & 2, Wells & Kral Complaints.* Notably, in *Wells* and *Kral*, neither complaint specified the amount of damages sought, even though, like Ms. Hall, the plaintiffs were quite specific in the *kind* of relief they requested. *See, e.g. Ex. 1, Wells Complaint* at 10. In that case, defendants offered and plaintiffs accepted an Offer of Judgment to settle their claims "for compensatory Title VII and negligence damages," and plaintiffs moved for entry of default judgment for the damages (including punitive damages) not addressed by the Offer of Judgment. *See, e.g., Ex. 3, Kral's Application*

---

[3] The two cases were consolidated along with the case of the *EEOC v. Lobb & Company, Inc., et al.,* Civil Action Number 97-WM-1317.

*for Entry of Default Judgment.* The court granted default judgment and conducted a hearing to determine the amount of damages. *See, Ex. 4, Order on Motion for Entry of Judgment by Default.* Despite plaintiffs' failure to specify the amount of damages sought in their respective complaints, after holding an evidentiary hearing, the court awarded nearly $500,000 against the defendants for sexually harassing the plaintiffs. *See, Ex. 5, Transcript of Judgment.*

These cases demonstrate that Rule 54's notice requirements may be met even when a complaint sets forth the types, but not the *amount*, of relief sought. Allowing flexibility in plaintiff's ability to request relief comports with §1983's intent to provide a "broad remedy for violations of federally protected civil rights," and ensuring that plaintiffs are compensated for violations of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978).

## II.     Determination of Ms. Hall's Compensatory Damages

While actual economic damages can often be determined through fairly easy computation, Ms. Hall's Amended Complaint, in large part, requests damages that are not readily quantifiable, and instead are appropriate for a finder of fact to determine in its discretion and based upon the evidence presented. In terms of actual economic damages, Ms. Hall was forced to undergo a surgical sphincterotomy because of the brutality of Defendant Terrell's acts of sodomy, after enduring nearly two years of bowel dysfunction. Ms. Hall will present billing records at the Remedies Trial reflecting that the cost of this procedure was $3,885.14. But, as is often found in civil rights cases, the actual economic damages may be quite small relative to the extreme nature of the non-economic, emotional-distress damages. Thus, the real question is how much money can "make whole" a woman who was repeatedly raped by an abusive prison guard?

To provide the Court with some guidance in making this determination, undersigned counsel has undertaken a survey of relevant cases. A review of cases involving rapes of prisoners in penal institutions demonstrates compensatory damage awards as large as

$2,000,000.00. *Ex. 6, Jury Verdicts and Settlements in the Prison Context.* In rape cases outside of the prison context, emotional distress and pain and suffering damages awards of six- and seven-figure numbers are quite common. *See, Ex. 7, Jury Verdicts and Settlements in Rape Cases.* Moreover, this firm has been successful at securing many seven-figure jury verdicts under facts and circumstances nowhere near as compelling as those presented in Ms. Hall's case. *See, Ex. 8, Jury Verdicts and Settlements in Cases Prosecuted by Undersigned Counsel.* Juries have awarded such damages for pain and suffering for clients who have been discriminated against in the employment context, but who, unlike Ms. Hall, did not have their physical safety and bodily integrity jeopardized. While each case presents its own unique set of facts, these cases provide benchmarks to assist the Court in determining the reasonable damages and other relief to redress Ms. Hall's past and future pain and suffering.

### III.     Determination of Punitive Damages Against Defendant Terrell

Awarding punitive damages against Defendant Terrell with a heavy hand in this case will serve the overlapping goals underlying civil rights legislation and punitive damages to ensure that Defendant Terrell is held accountable and punished for his wrongdoing, to deter future such conduct by both Defendant Terrell and other corrections officials nationwide, and to express the public's anger at such outrageous conduct. *See Smith v. Wade*, 461 U.S. 30, 49 (1983) ("the deterrence of future egregious conduct is a primary purposes of both §1983 and of punitive damages"); *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 307 fn. 9 (1986) (explaining that the purposes of different types of damages in a §1983 case include punishing defendant for malicious conduct and deterring others from similar conduct); *Lightning Lube, Inc. v. Venuto*, 4 F.3d 1153 (3rd Cir. 1993) ("[i]n awarding punitive damages, the jury in a sense vents society's collective anger"); *Allen v. R & H Oil & Gas Co.*, 63 F.3d. 1326, 1333 (5th Cir. 1995) (noting plaintiff's public service in bringing the wrongdoer to account). Indeed, this Court

has the opportunity to assess the egregiousness of Defendant Terrell's conduct, both in terms of his utter disregard for Ms. Hall's dignity and constitutional rights (and those of other female inmates), and his complete disrespect for this Court's processes and authority.

In addition, the availability of punitive damages in a federal civil rights case does not rest upon an underlying award of actual damages. *Hennessy v. Penril Datacom Networks Inc.*, 69 F.3d 1344, 1452 (7th Cir. 1995) (affirming award of punitive damages noting that "[n]othing in the plain language of §1981 conditions an award of punitive damages on an underlying award of compensatory damages"); *see also Shea v. Galaxie Lumber & Construction Co.*, 152 F.3d 729 (7th Cir. 1998) (affirming jury award of punitive damages even absent award of actual damages). The U.S. Supreme Court has never held that simple mathematical formulae should determine the validity of a punitive damages award, finding instead that "perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

The reprehensibility of Defendant Terrell's conduct has already been acknowledged in this Court's January 23, 2009 Order. Certainly, Defendant Terrell's absence at the Trial should not dissuade the Court from awarding punitives with a heavy hand, as the Tenth Circuit has found the policy goal of deterrence to be so powerful as to compel an award of punitive damages <u>even where an absent defendant might never learn of the verdict</u>. *See Campbell v. Bartlett*, 975 F.2d 1569, 1575 (10th Cir. 1992). The repeated nature of Defendant Terrell's conduct -- engaging in this abusive sexual relationship over the course of months, and ignoring Ms. Hall's pleas for him to stop -- certainly warrants a high penalty. Worse still is that Ms. Hall was not the only victim of Defendant Terrell's sexual predation. Rather, Defendant Terrell repeatedly preyed on the women he supervised in the prison kitchen, where he knew there were no cameras to capture his wrongdoing. Defendant Terrell used his authority, and his acute awareness of the

vulnerability of the incarcerated women who worked for him, in order to persuade, entice or even order them to succumb to his sexual desires. Given his complete failure to acknowledge the authority of this Court, and the clear need to deter other corrections personnel from this type of abusive conduct, only a substantial punitive damages award will (perhaps) send a message to Defendant Terrell, and to others like him who choose to abuse their positions of authority.

While this case merits a considerable punitive damages award, determining the exact amount is within the Court's discretion. *See, e.g., Beck v. Atlantic Contr. Co.*, 1994 U.S. Dist. LEXIS 15944 (D. Kan. October 14, 1994). By way of example, the attached Exhibits 6-8 reflect both the utmost importance of punishing those who knowingly and willfully violate the constitutional rights of others, as well as society's disdain for wrongdoing by prison guards and others who abuse positions of authority. *See, Exs. 6-8* (including, for example, a $2,000,000 punitive damages award against a guard for raping an inmate). It is not uncommon for punitive damage awards to reach the six- and seven-figure sums, even in cases with much less extreme circumstances than the rape of an incarcerated woman by a guard. *See, e.g., Ex. 8* (reflecting considerable punitive damages awards in the employment context). A primary goal of Ms. Hall in bringing this action was to prevent the future abuse of other women like her. This deterrent effect can only be accomplished through a substantial punitive damages award.

DATED this 10th day of April 2009.

> KILLMER, LANE & NEWMAN, LLP
>
> *s/ Mari Newman*
> Mari Newman
> Darold W. Killmer
> Althea S. Licht
> 1543 Champa Street, Suite 400
> Denver, Colorado 80202
> (303) 571-1000

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2009, I electronically filed the foregoing **PLAINTIFF'S TRIAL BRIEF** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Patricia Herron (pat.herron@state.co.us), ATTORNEY FOR STATE DEFENDANTS

I further certify that in accordance with D.C.COLO.LCivR 6.1(D) a paper copy of the foregoing was served on the following non-CM/ECF participants in the manner indicated by his name:

Leshawn M. Terrell **(Via U.S. Mail)**
2 North Roosevelt Street
Colorado Springs, CO 80909

*PRO SE* DEFENDANT

                                                                *s/ Kimberly J. Jones*