*Hall v. Zavaras, et al.*
**Civil Action No. 08-cv-00999-DME-MEH**
**Trial Brief**
*Exhibit 8 - Jury Verdicts and Settlements in Cases Prosecuted by Undersigned Counsel*

Our lawyers have been successful at securing many seven-figure jury verdicts under facts and circumstances nowhere near as compelling as those presented in Amanda Hall's case.

In *Simmons v. General Steel,* a Jefferson County jury awarded our client over $1,440,000 when she was fired for opposing her employer's illegal practices. This verdict included $800,000 in punitive damages. Based on the defendants' continued misconduct during the course of the litigation, the court subsequently doubled the punitive damages awarded by the jury, for a total of $1,600,000 in punitive damages alone. With pre-judgment interest and costs, the total award was **$2,612,905**. It is worth noting that our client worked at General Steel for a total of only about four months, and by the time of trial was reemployed making more money, and had recently married. Indeed, Ms. Simmons' economic damages were just $240,300, less than one-tenth of the final award.

In *Rabah Khatib v. Executive Tower Hotel*, a Denver jury awarded our client **$3,785,000** against a hotel and its owner individually for the discriminatory wrongful discharge of his employment. This verdict included $2.2 million in punitive damages. While discrimination in employment is undoubtedly bad, and the loss of a job certainly can be traumatic, it should go without saying that the damages of such an event, let alone the outrage attendant to the termination, does not compare to the loss suffered in this matter.

In *Pam McCroskey v. Colorado Anesthesia Associates*, a case alleging retaliation in violation of Title VII, a Denver federal jury awarded our client **$1,700,000**. This verdict consisted of $500,000 in compensatory damages for emotional distress and $1,200,000 in punitive damages related to the employer's retaliation against our client after she had assisted another employee in a sex discrimination case by testifying in her favor. The employer's retaliation consisted of its interference with her rightful receipt of disability benefits under an LTD policy she had purchased. Notably, this award did not even include the actual damages recovered by our client (i.e., the wrongfully withheld insurance benefits), which were recovered in a separate proceeding (in excess of a million dollars), nor did this award include the attorneys fees and costs which were awardable, in excess of $300,000 additional dollars. Again, while the temporary loss of insurance benefits is a real loss, it is nothing compared to the losses suffered in the current case.

In *Bob Wunder v. Echo Bay Mines, Inc*., an Arapahoe County jury awarded our client nearly **$1,200,000** against his employer who had recruited him to come to work based upon fraudulent representations. The jury awarded him nearly $600,000 in punitive damages despite the fact that his employer had paid him over $400,000 in severance pay at the time he was laid off.

In *Linda Langley v. Adams County, Colorado*, the federal jury's verdict plus attorney fees and costs exceeded **$1.1 million** in a Section 1983 case alleging retaliatory termination of employment. While Ms. Langley's termination was undoubtedly serious, she later became re-employed and was able to resume a normal and happy life after having been illegally fired.

In *Cronk v. Intermountain Rural Electric Association*, the employer ended up paying over **$1,600,000** after having unsuccessfully appealed the jury's verdict through the Colorado Court of Appeals and an attempted *certiorari* petition to the Colorado Supreme Court.

In *Africa House v. Tabor Center*, a Denver federal jury awarded our client **$2,850,000** against a retail shopping center that *attempted, but failed* to evict her African arts and imports store from the shopping center. The actual economic damages underlying the lawsuit were only about $75,000. The jury imposed punitive damages in the amount of $2,500,000 based upon its finding that the defendants had willfully violated our clients' rights to be free from race discrimination in the running of her business. This considerable verdict was imposed despite the fact that our client remained continuously in business in the shopping center, having defeated the defendant's efforts to cause an eviction.